UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH ALLEN BRYANT,

    Defendant.

_____/

Case No. 1:26-cr-19

Hon. Hala Y. Jarbou

## **OPINION**

Defendant Joseph Allen Bryant has been charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (*See* Indictment, ECF No. 12.)  The firearm in question was recovered from a search of his home conducted pursuant to a warrant.  Police obtained the warrant based on a witness's allegation that Bryant used a firearm to sexually assault two people at a motorcycle club.  Bryant now moves to suppress the firearm and related evidence, arguing that the police lacked probable cause to search his residence.  (Mot. to Suppress, ECF No. 33.)  He contends that his alleged possession of the firearm outside his home during the commission of a crime did not create probable cause to believe the firearm would be found within his home.  However, this contention runs contrary to Sixth Circuit precedent establishing that officers may reasonably infer that a person who is observed using a gun probably keeps that gun in their home.  For that reason, the motion to suppress will be denied.

Also before the Court is Bryant's motion to dismiss (ECF No. 42), in which he argues that 18 U.S.C. § 922(g) is unconstitutional because it exceeds Congress's powers under the Commerce Clause.  As Bryant concedes, this argument has been rejected in binding Sixth Circuit precedent, so the Court will deny that motion as well.

## I. BACKGROUND

On December 23, 2025, a witness identified as "D.B." contacted the Lansing Police Department to report an alleged sexual assault that occurred ten days prior. (Warrant Aff. ¶ C, ECF No. 33-1.) D.B. stated that she was at the Hood Riders Motorcycle Club in Lansing, Michigan, when she and another victim were sexually assaulted at gunpoint by a man she knew as "Joe Dirt." (*Id.*) Based on the man's alleged statements during the assault, it was apparently motivated by a rivalry with another motorcycle club. (*Id.*) D.B. provided an address for "Joe Dirt" to the police, stating that she lived in the same neighborhood as him. (*Id.* ¶ H.) The police identified the resident of the address as Joseph Allen Bryant, who had a felony record. (*Id.* ¶ D.) They subsequently applied for a warrant to search Bryant's home for evidence of the sexual assault as well as evidence that he illegally possessed a firearm as a felon. (*Id.* ¶ K.) The warrant affidavit included the above information, as well as the statement that "[f]irearms . . . are items of value and utility that are kept for extended periods to include years or decades." (*Id.* ¶ F.)

A magistrate issued the search warrant on January 28, 2026. (Search Warrant, ECF No. 33-2.) The police searched Bryant's house and seized a firearm. The United States subsequently indicted Bryant for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Bryant now moves to suppress the firearm, arguing that it was obtained via a search conducted without probable cause. He also moves to dismiss the indictment based on the asserted unconstitutionality of § 922(g).

## II. LEGAL STANDARDS

### A. Motion to Suppress

"As a general matter, the exclusionary rule requires the suppression of evidence obtained in violation of the Fourth Amendment." *United States v. Gray*, No. 25-3672, 2026 WL 2021018, at *4 (6th Cir. July 13, 2026) (citing *Murray v. United States*, 487 U.S. 533, 536–37 (1988)). In

2

order for a search of a person's home to comply with the Fourth Amendment, "[t]he police must generally obtain a warrant based upon a judicial determination of probable cause." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016).  In resolving a motion to suppress, the Court must examine "the information presented in the four corners of the affidavit" to determine whether the magistrate "had a 'substantial basis for concluding that probable cause existed.'" *Brown*, 828 F.3d at 381.  "The job of the magistrate judge presented with a search warrant application is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (omission in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "There must, in other words, be a *nexus* between the place to be searched and the evidence sought." *Id.* (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)).  The nexus may arise from direct evidence—such as a witness's observation of an object in a given location—or it may be inferred from circumstantial evidence.  *United States v. Sanders*, 106 F.4th 455, 462 (6th Cir. 2024).

### B. Motion to Dismiss

Rule 12 of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  A Rule 12 motion may be used to challenge the constitutionality of the statute underlying the indictment.  *See, e.g.*, *United States v. Rife*, 429 F. Supp. 3d 363, 366 (E.D. Ky. 2019); *United States v. Young*, No. 6:24-cr-25, 2025 WL 627207, at *3 (E.D. Ky. Feb. 26, 2025).  When evaluating a motion to dismiss, the Court accepts as true all factual allegations in the indictment.  *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

3

### III. ANALYSIS

#### A. Motion to Suppress

Bryant does not contest that the police reasonably believed he had committed an assault with a firearm or that he resided at the identified home.  Rather, his argument is that the mere fact he had allegedly used a gun at the motorcycle club does not support the inference that the gun would be discovered in his home.  Generally speaking, "[a] magistrate may [sometimes] infer a nexus between a suspect and his residence, depending upon the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (internal quotation marks omitted).  Bryant argues that under the circumstances of this case, it was not reasonable to infer that the firearm in question would be at his home.

Support for Bryant's argument comes primarily from *United States v. Bethal*, where the police searched the defendant's home for weapons based on evidence that he had participated in two drive-by shootings.  245 F. App'x 460, 468 (6th Cir. 2007).  The Sixth Circuit held that the police lacked probable cause for the search because there was no specific reason to think the guns used in the shootings would be found at the defendant's home two months later. *Id.* at 469.  Rather, the court explained, "persons accused of murders often dispose of the guns utilized in the crime soon afterward." *Id.* at 468.  And the warrant affidavit "provided no indication that at the time of the search, [the defendant] was still participating in gang-related shootings, or was seen carrying a gun." *Id.* at 469.  Bryant argues that there was likewise no basis to conclude that a gun he had been observed using a month and a half prior would still be in his house.

As an initial matter, it is not clear that *Bethal*'s logic applies here.  One of the primary reasons a person who commits a murder might dispose of the weapon is to avoid being identified

4

as the perpetrator—they want to get rid of the "smoking gun," as it were.  If the person retains possession of the gun, it could be matched to the crime using ballistics evidence.  That possibility is less salient here, where the alleged victim knew Bryant and would have no trouble identifying him.  And the gun was never fired during the crime, so there was no ballistics evidence to speak of.  In short, even assuming that murderers do often dispose of their guns, there was no reason to assume Bryant would do so here.

More importantly, the Court is not bound by *Bethal*'s holding and finds it contrary to the weight of Sixth Circuit precedent, which suggests that a person's possession of a gun in a public place supports the reasonable inference that they keep a gun in their home.  For example, in *United States v. Vanderweele*, the court held that a witness report of the defendant possessing a gun and silencer at a motorcycle club was sufficient to support a search of the defendant's house for the silencer seven months later.  545 F. App'x 465, 467, 469 (6th Cir. 2013).  The court observed "that individuals who own guns keep them at their homes," and that guns or silencers are "commonly kept by [their] owner for a long time."  *Id.* at 469 (internal quotation marks omitted).  Similarly, in *United States v. Goodwin*, the court held that police had probable cause to believe a machine gun purchased by the defendant would be found in his residence several months later.  552 F. App'x 541, 544–45 (6th Cir. 2014).  The court explained that "[f]irearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time."  *Id.* at 545 (alteration in original).  And in *United States v. Cobb*, the court held that a defendant who had committed a series of armed robberies would likely have a gun at his residence six weeks later because he probably kept it there "either to hide or potentially use in a future robbery."  397 F. App'x 128, 133 (6th Cir. 2010).

5

Admittedly, each of these cases is potentially distinguishable from this one.    In *Vanderweele*, the defendant was merely observed possessing a gun; he did not commit any crime with it and thus lacked any specific motive to dispose of it.  545 F. App'x at 467.  In *Goodwin*, the defendant who bought the machine gun explicitly stated that "he intended to keep the Ruger machine gun and did not want to get rid of it because it was so unique."  552 F. App'x at 543 (internal quotation marks omitted).  And in *Cobb*, the defendant had committed three armed robberies, supporting the inference that he might keep the gun around to commit more.

But the case that most strongly cuts against Bryant's view is *Peffer v. Stephens*, 880 F.3d 256 (6th Cir. 2018).  That case concerned whether a computer was likely to be found at the defendant's home, so its holding is not directly on point.  But the court drew an analogy to cases involving firearms, and surveyed circuit precedent on the subject.  The court explained that "[w]hen it comes to guns, because we 'have acknowledged that individuals who own guns keep them at their homes,' a suspect's use of a gun in the commission of a crime is sufficient to find a nexus between the gun that was used and the suspect's residence."  *Peffer*, 880 F.3d at 271 (citation omitted) (relying on *Vanderweele*, *Goodwin*, and *Cobb*).  The *Peffer* court ignored the details that Bryant focuses on in *Vanderweele*, *Goodwin*, and *Cobb*, instead reading those cases as supporting a general principle that a person who uses a gun probably keeps it in their home.  *Id.*  The court also approvingly cited out-of-circuit precedent establishing a similarly broad principle.  *See United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (police had probable cause to search residence of murder suspect because the murder weapon was plausibly in his home); *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975) (police had probable cause to search residence of armed robbery suspect for weapons because "people who own pistols generally keep them at home or on their persons").  The *Peffer* court acknowledged that its characterization of the case law appeared

6

to clash with *Bethal*'s holding. But it "question[ed] *Bethal*'s emphasis on ongoing criminal conduct" and noted that it was "not bound by this unreported decision." *Peffer*, 880 F.3d at 271 n.12.

In the Court's view, *Peffer* carries more weight than *Bethal* because the former is a published case containing a more comprehensive articulation of the Sixth Circuit's view on the subject. Bryant argues that the Sixth Circuit implicitly abrogated *Peffer*'s reasoning in *Sanders*, a subsequent en banc case, but his reading of *Sanders* is unpersuasive. Like *Peffer*, *Sanders* was a drug dealing case with no direct connection to firearms. *See* 106 F.4th at 459. But Bryant points to two aspects of *Sanders* that purportedly conflict with *Peffer*'s discussion of gun cases.

First, the *Sanders* court detailed the various fact patterns that could give rise to an inference that a particular item of contraband was at the suspect's home. It explained:

> [One] set of cases involves a search warrant affidavit that adequately establishes both where a defendant resides as well as the defendant's active engagement in certain criminal activity. In those circumstances, an inference can reasonably be made (especially when aided by an affiant-officer's experience) that the "criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence." *United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) (gun crimes) . . . .

*Sanders*, 106 F.4th at 462. Bryant argues that the reference to "active engagement" supports *Bethal*'s holding that police cannot infer a gun will be kept in a suspect's home without ongoing criminal conduct. While the Court acknowledges that *Sanders*'s language accords to some degree with *Bethal*, that language is not definitive enough to overcome the clear principle outlined in *Peffer*—a case that *Sanders* does not address or explicitly overrule. Moreover, the *Sanders* court did not purport to set out an exhaustive list of every circumstance that justifies searching a suspect's home—to the contrary, it acknowledged that "[m]any roads . . . can lead to a probable cause nexus, given its fact-intensive foundation." 106 F.4th at 462. Thus, while *Sanders* provides

7

that ongoing criminal conduct may be one basis to search a home, it does not suggest that the absence of ongoing criminal conduct would necessarily *preclude* a search of a suspect's home.

Bryant also argues that *Sanders* rejects the use of any "categorical rule[s]" in determining whether probable cause exists.  *Id.* at 466.  The *Sanders* court noted that "there are few absolutes" involved in probable cause determinations, and explained: "That the known drug dealer inference can be drawn permissibly in some cases does not mean that probable cause is necessarily satisfied whenever the home of someone connected to a drug trafficking crime is identified."  *Id.* (internal quotation marks omitted).  Again, in laying out this general principle, *Sanders* did not claim to be rejecting any of the Sixth Circuit's prior case law.  Moreover, even if the inference described in *Peffer*—i.e., from the premise that a suspect used a gun to the conclusion that the gun will be found in their home—may not be treated as a categorical rule, it may still be treated as a general guideline. *Peffer* itself acknowledged that specific circumstances might make such an inference inapt: "If an affidavit presents probable cause to believe that a crime has been committed by means of an object, . . . a magistrate may presume that there is a nexus between that object and the suspect's current residence, *unless the affidavit contains facts that may rebut that presumption*."  880 F.3d at 270–71 (emphasis added).  Here, there were no facts that would rebut that presumption, so the inference was valid.

In short, the Court does not interpret *Sanders* as rejecting the rule set out in *Peffer*.  Indeed, the Sixth Circuit has continued to cite *Peffer* notwithstanding the existence of *Sanders*.  *See Gray,* 2026 WL 2021018, at *6 ("When searching for a gun, an affidavit that establishes probable cause that the suspect has used a gun to commit a crime permits a magistrate to 'presume that there is a nexus between that object and the suspect's current residence, unless the affidavit contains facts that may rebut that presumption.'" (footnote omitted) (quoting *Peffer*, 880 F.3d at 270–71)).  And

8

applying *Peffer* here, the police could reasonably infer that Bryant's gun would be found in his home.

Bryant contends that even if the possession of a gun creates a presumption that the gun will be in one's home, the affidavit here contained facts rebutting that presumption. In particular, he asserts that the affidavit indicated his use of a gun was related to the motorcycle club, so the gun was likely to be owned and stored by the motorcycle club or one of its other members and would not be found in his house. But while the affidavit does suggest the alleged assault was connected to a club rivalry, it provides no information about the provenance of the gun, and there is no reason to infer that Bryant must have been using a gun that belonged to the club merely because he was in a clubhouse and motivated by inter-club disputes.

Bryant next argues that even if the police could in principle infer that he kept the gun in question at his home, enough time passed between D.B.'s observation of him possessing the gun and the search of his home a month and a half later that the police no longer had reason to believe the gun would be found there. It is true that "stale information cannot be used in a probable cause determination." *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009). To determine whether information is stale, the Court examines the following factors:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?),
>
> (2) the criminal (nomadic or entrenched?),
>
> (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and
>
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*Id.* The first factor weighs in favor of a finding of staleness here because there is no evidence that Bryant repeatedly used the gun. The second factor weighs against a finding of staleness because

9

Bryant's home appeared to be his permanent residence—there was no indication he frequently moved around.  The fourth factor also weighs against a finding of staleness because Bryant's home was a secure place where he was likely to keep any contraband.  Bryant argues that his home was not an "operational base" for the crime, which took place at the motorcycle club.  That much is true, but the underlying logic of the fourth factor is that police are unlikely to find contraband in a location that was only temporarily used for criminal activity and then promptly vacated.  Bryant's home was not a temporary "forum of convenience," so it is reasonable to assume anything he put there would remain until he disposed of it.

The third factor also weighs against a finding of staleness, and is the most decisive here. The Sixth Circuit has frequently observed that guns "are durable goods and might well be expected to remain in a criminal's possession for a long period of time."  *United States v. Powell*, 603 F. App'x 475, 478 (6th Cir. 2015); *see Vanderweele*, 545 F. App'x at 469–70 (a gun is "commonly kept by its owner for a long time"); *United States v. Lancaster*, 145 F. App'x 508, 513 (6th Cir. 2005) ("[T]hose who own and possess firearms generally maintain them for long periods of time.").  Accordingly, the Sixth Circuit has held that a warrant to search for a firearm was not stale despite lapses in time similar to, or significantly larger than, the one and a half months that passed here.  *See, e.g.*, *Lancaster*, 145 F. App'x at 513 (two years); *United States v. Hampton*, 760 F. App'x 399, 403 (6th Cir. 2019) (ten months); *Vanderweele*, 545 F. App'x at 469–70 (seven months).  Thus, the information in the warrant was not stale.

In short, the police had probable cause to believe Bryant illegally possessed a gun in his home.  Moreover, under *United States v. Leon*, 468 U.S. 897, 905 (1984), evidence obtained pursuant to a search warrant but without probable cause should not be suppressed unless "a reasonably well trained officer would have known that the search was illegal despite the

magistrate's decision." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).  Even if the affidavit here did not establish probable cause, the police were entitled to rely on the warrant in good faith because—for all the reasons discussed above—the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id.* (quoting *Leon*, 468 U.S. at 923).  This good-faith exception provides an independent basis to deny Bryant's motion.

### B. Motion to Dismiss

Bryant also moves to dismiss the indictment on the basis that 18 U.S.C. § 922(g) is unconstitutional.  Section 922(g) makes it a crime for certain people, including those convicted of a prior felony, "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g).  Bryant argues that despite the statute's reference to interstate or foreign commerce, it exceeds Congress's power under the Commerce Clause because it regulates possession rather than commercial activity.  *See United States v. Hemani*, 146 S. Ct. 1677, 1695 (2026) (Thomas, J., concurring) ("Section 922(g) appears to exceed Congress's powers under the Commerce Clause.").  As Bryant acknowledges, however, the Court is bound by Sixth Circuit precedent to the contrary; he merely makes the argument to preserve it on appeal.  The Sixth Circuit explained in *United States v. Vaughn* that, according to its prior precedents, Section 922(g) provides a sufficient jurisdictional hook to satisfy the Commerce Clause because it "makes it a requirement for a gun to have moved in or affect interstate commerce to sustain a conviction."  No. 23-5790, 2024 WL 4615853, at *3 (6th Cir. Oct. 30, 2024) (rejecting both facial and as-applied challenges to § 922(g)); *see United States v. Chesney*, 86 F.3d 564, 569 (6th Cir. 1996); *United States v. Thompson*, 361 F.3d 918, 923 (6th Cir. 2004).  Thus, the motion to dismiss will be denied.

11

## IV. CONCLUSION

For the reasons explained above, the Court will deny the motion to suppress and the motion to dismiss.  An order will enter in accordance with this Opinion.


Dated: August 7, 2026                              /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   CHIEF UNITED STATES DISTRICT JUDGE